**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARVIN TURCIOS on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 20-cv- |
| v. | ) ) | |
| CONVERGENT OUTSOURCING, INC., CACH, LLC, and RESURGENT CAPITAL SERVICES LP, | ) ) ) ) | |
| Defendant. | ) ) | <u>Jury Demanded</u> |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff, Marvin Turcios, on behalf of himself and a putative class, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and alleges:

### <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA and 28 U.S.C. §1331.

2.      Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

### <u>STANDING</u>

3.      Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4.      Specifically, Plaintiff suffered a concrete injury and harm as a result of Defendants' attempt to collect an alleged debt from him, by mailing him a letter that misrepresents his rights under the FDCPA, and threatens an action that is illegal.

1

## PARTIES

5.    Plaintiff, Marvin Turcios ("Plaintiff"), is a resident of the State of Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted Citibank (South Dakota), N.A. account. Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a (3) of the FDCPA.

6.    Defendant, CACH, LLC ("CACH"), is a Nevada limited liability company that does or transacts business in Illinois. Its registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois, 62703.

7.    CACH maintains a website, https://www.cach-llc.com.

8.    At the time of filing of this Class Action Complaint, CACH's website reads in part as follows:

> Your Account Has a New Owner: CACH
>
> You still owe your debt but the new owner is CACH. CACH outsources the management of its portfolio of accounts to a company called Resurgent Capital Services. Resurgent Capital Services is a fully licensed third-party debt collector specializing in the management of these types of consumer assets. Resurgent may contact you directly or may ask one of their collection agency partners to help them reach out to you.
>
> *See* https://www.cach-llc.com, last viewed 23 October, 2020.

9.    CACH is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10.    CACH purchases defaulted consumer debts and collects them through third parties.

11.    CACH's principal business purpose is the collection of defaulted consumer debts through interstate commerce, including the mails. CACH is thus "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

12.     CACH derives more than 50% of its income from the collection, through entities such as Resurgent, of defaulted consumer debts that it purchases.

13.     CACH holds a collection agency license from the State of Illinois.

14.     CACH outsources the management of its portfolio of accounts to a company called Resurgent Capital Services LP ("Resurgent").

15.     Resurgent services consumer assets that CACH purchases.

16.     Resurgent is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

17.     Resurgent is a fully licensed third-party debt collector specializing in the management of the types of consumer assets that CACH purchases.

18.     In connection with debt collection, Resurgent contacts consumers directly or places debts asserted to be owed to CACH with other collection agencies, for collection.

19.     Resurgent holds a collection agency license from the State of Illinois.

20.     Resurgent regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, such as that asserted to be owed to CACH in this case, and is a "debt collector" as defined in 15 U.S.C. § 1692a (6) of the FDCPA.

21.     Resurgent placed the alleged debt with Convergent Outsourcing, Inc. for collection from the Plaintiff.

22.     Defendant, Convergent Outsourcing, Inc., ("Convergent"), is a Washington corporation, registered to do business in Illinois. Its registered agent here is CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois, 60604.

3

23.     Convergent is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

24.     In the year 2020, Convergent communicated credit information on a monthly basis for thousands of debts that it was seeking to collect to the Experian., Equifax and TransUnion credit reporting agencies, causing credit information to be reported on said debts through said credit reporting agencies.

25.     Convergent regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, such as that asserted to be owed to CACH in this case, and is a "debt collector" as defined in 15 U.S.C. § 1692a (6) of the FDCPA.

26.     Convergent holds a collection agency license from the State of Illinois.

## FACTUAL ALLEGATIONS

27.     According to Convergent, Plaintiff incurred an alleged debt for services purchased and used for personal purposes, originally for a non-business, consumer Citibank (South Dakota), N.A. account.

28.     CACH asserts to have purchased the alleged debt after default by Plaintiff. "alleged debt".

29.     CACH thereafter placed the alleged debt to be serviced by Resurgent.

30.     Resurgent thereafter placed the alleged debt with Convergent for collection from the Plaintiff.

31.     The alleged debt is thus a "debt" as that term is defined at § 1692a (5) of the FDCPA.

32.     Due to his financial circumstances, Plaintiff could not pay his alleged debt, and the alleged debt went into default.

4

33.     Convergent subsequently began collecting the alleged debt on behalf of Resurgent and CACH.

34.     On or about December 14, 2019, Convergent mailed a collection letter ("Letter") to Plaintiff in an attempt to collect on the alleged debt (Exhibit A, Letter).

35.     The Letter conveyed information about the alleged debt, including an account number, the identity of the creditor, and an account balance.

36.     Thus, the Letter was a communication as that term is defined in §1692a (2) of the FDCPA.

37.     The Letter was Convergent's initial communication with Plaintiff made in connection with the collection of the alleged debt.

38.     The Letter conveyed an "Amount Owed" of $1,137.04 on the alleged debt.

39.     The Letter also communicated a "Total Balance" of $1,137.04.

40.     The Letter indicates that 'THIS COMMUNICATION IS FROM A DEBT COLLECTOR."

41.     The Letter purports to set out several disclosures required by 15 U.S.C. § 1692g, including a "Notice of Debt" that provides in part as follows:

> . . . If you notify this office *__in writing at PO Box 9004, Renton, WA 98057__* within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

(Ex. A, Letter) (emphasis added)

42.     The "Notice of Debt" also provides in part as follows:

> . . . If you request this office in writing at *__in writing at PO Box 9004, Renton, WA 98057__* within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

5

(Ex. A, Letter) (emphasis added)

43. Convergent thus communicated that Plaintiff had a right to dispute the debt in writing, and to obtain the name and address of the original creditor, **but only** by sending notice of a dispute via mail, postage prepaid to a specific PO Box.

44. The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o, provides that within five days after a debt collector first duns a consumer debtor, the collector must send the debtor a written notice containing specified information. The required information includes the amount of the debt, the name of the creditor, and, of particular relevance here, a statement that unless the debtor "disputes the validity of the debt" within thirty days the debt collector will assume that the debt is valid <u>but that if the debtor notifies the collector in writing within thirty days that he is disputing the debt, "the debt collector will obtain verification of the debt [from the creditor] . . . and a copy of [the] verification . . . will be mailed to the consumer."</u> §§ 1692g(a)(1)-(4). *Bartlett v. Heibl,* 128 F.3d 497, 498 (7th Cir. 1997) (emphasis added).

45. Section 1692g of the FDCPA, by its plain terms, thus does not require that a written dispute be made by mail to a specific PO Box. Rather, the statute only requires a written notice to the debt collector to dispute a debt to request verification, or to request the name and address of the original creditor.

46. Plaintiff thus had a right to dispute the debt and to obtain the name and address of the original creditor in writing in a variety of ways, including by sending a dispute notice and/or a request for information to Convergent's address listed at the top of the letter, by faxing it, by emailing it, or even by serving a lawsuit on its agent that is based on a dispute, and thus communicates the fact of the dispute. *See Kasalo v. Trident*

*Asset Mgmt.,* LLC, 53 F. Supp. 3d 1072, 1084 (N.D. Ill. July 7, 2014) (finding the service of a complaint that contained a dispute of a debt, on a debt collector, was a written dispute under section 1692g); *Blanchard v. N. Am. Credit Servs.,* 2016 U.S. Dist. LEXIS 48548, at *12-13 (S.D. Ill. Apr. 11, 2016) (recognizing that electronic communications, such as those effected via a web page, qualify as a written dispute under section 1692g); *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295 (7th Cir. 2002) (holding that e-mails can satisfy the writing requirement of the statute of frauds).

47.     By communicating that a written dispute and/or request for information had to be mailed to a specific PO Box, Convergent impermissibly diminished the world of communications that Plaintiff could have used to communicate a written dispute to obtain verification of the alleged debt, or to request the name and address of an original creditor, and thus Convergent unfairly abridged and falsely communicated Plaintiff's rights under section 1692g.

48.     In this case, Plaintiff also had a right to dispute the alleged debt by using Convergent's own dispute website that Convergent set up for this very purpose, at https://www.convergentusa.com/outsourcing/request/make/5.

49.     Convergent's website is convenient, allowing a consumer to fill out a simple form to submit a dispute, and does not require a consumer to have a fax machine, an envelope, paper and postage, or other means to communicate a dispute that would require a consumer to pay for the same.

50.     By Convergent's own disclosure to Plaintiff, however, a dispute for verification and/or request for the name and address of the original creditor, outside of mailing a letter to a specific PO Box in Renton, Washington, would not be valid.

51.     Plaintiff read the Letter and believed he was required to send his dispute to a PO Box in order to enforce his rights under the FDCPA.

52.     Plaintiff read the Letter and believed he was required to send his request for the name and address of the original creditor to a PO Box in order to enforce his rights under the FDCPA.

53.     An unsophisticated consumer reading the Letter would believe that he was required to send his dispute, and/or a request for the name and address of the original creditor, to a PO Box in order to enforce his rights under the FDCPA.

54.     It is notorious that sending mail to a PO Box is frustrating and often an exercise in futility. Moreover as opposed to email and fax, Plaintiff would have no evidence of submission of his letter if he had mailed one, other than his say-so, while submission by email and fax is quicker, and can be verified and evidenced by an electronic record.

55.     Plaintiff was not able to dispute the alleged debt or request the name and address of the original creditor in writing within the deadline stated in the Letter, as he had neither a stamp nor an envelope required to mail a letter of dispute and a request for the name and address of the original creditor, to Convergent.

56.     Plaintiff would have used an alternate method to dispute the alleged debt and request the name and address of the original creditor, had he been aware that it was possible and allowed under the law.

57.     An unsophisticated consumer would likely have considered the use of an alternate method to dispute the alleged debt, and /or to request the name and address of the original creditor, had he been aware that it was possible and allowed under the law,

especially since the alternate methods available are more reliable, quicker, and do not require an unsophisticated consumer to incur an additional expense (*i.e.*, pay for a stamp, paper and envelope) in order to dispute a debt or request the name and address of an original creditor.

58.   Plaintiff was harmed in not receiving accurate information relating to his dispute rights as he lost the opportunity to be able to dispute the alleged debt, and to obtain the name and address of the original creditor under section 1692g, in a manner that was free and easier than that communicated to him, due to being provided false and misleading information regarding his rights to request and obtain this information.

59.   Convergent falsely communicated Plaintiff's dispute rights under the FDCPA as being limited to the use of a specific PO Box, when in fact Plaintiff could have used fax, email, or Convergent's own website, *inter alia*, to dispute the alleged debt in writing, and/or to request the name and address of the original creditor.

60.   Convergent's statement overshadowed Plaintiff's right to dispute the debt in writing, and to request the name and address of the original creditor.

61.   15 U.S.C. § 1692g provides:

> **Validation of debts**
>
> **(b) Disputed debts**
>
> **. . . Any collection activities and communications during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor. . . .**

62.   Convergent overshadowed its disclosure of Plaintiff's rights to dispute a debt and/or request the name and address of the original creditor within the thirty-day validation period, in violation of 15 U.S.C. § 1692g(b), when it stated that such dispute

9

and/or request for the name and address of the original creditor had to be sent by mail and to a specific PO Box.

63.    15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.   Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

64.    Convergent used deceptive, misleading and false representations and means in connection with collecting the alleged debt by communicating a notice of debt that abridges the rights of Plaintiff in disputing a debt pursuant to section 1692g, since Plaintiff had a right to dispute the alleged debt in varied ways that Convergent falsely abridged and limited, including but not limited to by indicating that Plaintiff must mail a dispute to a specific address, and must therefore incur an expense to dispute the alleged debt, when this statement was false.

65.    Convergent used deceptive, misleading and false representations and means in connection with collecting the alleged debt by communicating a notice of debt that abridges the rights of Plaintiff in requesting the name and address of the original creditor pursuant to section 1692g, since Plaintiff had a right to request the name and address of the original creditor in varied ways that Convergent falsely abridged and limited, including but not limited to by indicating that Plaintiff must mail a request for the name and address of the original creditor to a specific address, and must therefore incur an expense to make such a request, when this statement was false.

10

66.     The disclosure by Convergent, in the Letter, also states in relevant part:

> . . . If you notify this office in writing at PO Box 9004, Renton, WA 98057 within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt ***or obtain a copy of a judgment and mail you a copy of such judgment*** or verification.

(Ex. A, Letter, emphasis added)

67.     The disclosure in the letter also states, in relevant part:

> . . . The law limits how long you can be sued on a debt. Because of the age of your debt, Cach cannot sue you for it. . .

*Id.*

68.     At the time the Letter was mailed, there was no judgment entered in connection with the alleged debt.

69.     At the time the Letter was mailed, CACH could not have obtained a copy of a judgment and thereafter mailed Plaintiff a copy of the same.

70.     Convergent's statement that it could obtain a copy of a judgment on the debt and thereafter mail it to Plaintiff is false.

71.     Convergent's statement that it could obtain a judgment on the debt and thereafter mail Plaintiff a copy contradicts its statement, also contained in the Letter, that CACH cannot sue Plaintiff to collect the debt.

72.     Plaintiff was confused at the conflicting statements, since the Letter states that it could obtain and mail a judgment to Plaintiff, though it also states that it cannot sue Plaintiff, and thus it also communicates that it cannot obtain a judgment.

73.     Convergent's reference to a judgment made Plaintiff believe that there may have been a judgment entered with respect to the alleged debt, that a judgment could be entered in the future, or that Convergent was in the process of obtaining one.

74.     Convergent's reference to a judgment would confuse the unsophisticated consumer, as it would induce the unsophisticated consumer to believe that there may have been a judgment entered with respect to the alleged debt, that a judgment could be entered in the future, or that Convergent was in the process of obtaining one—though the Letter also seems to communicate that a judgment is not possible to obtain as the debt is too old to sue upon.

75.     The two statements cannot be reconciled: either CACH could mail Plaintiff copy of a judgment, in which case the alleged debt is not too old to sue upon, or the debt is too old to sue upon, in which case no judgment could be obtained and mailed to Plaintiff.

76.     Both statements cannot be correct, and thus at least one is wrong.

77.     In fact, Convergent, Resurgent  and CACH had no intention of seeking a judgment on the alleged debt, and could not legally do so.

78.     Defendants knew that no judgment had been entered in the past with respect to the alleged debt.

79.     Defendants knew that the debt was too old to sue upon, so a judgment could never be entered on the alleged debt.

80.     Nonetheless, Convergent referenced a judgment in the Letter, though there was a 0% possibility that a judgment could be entered when the Letter was mailed.

81.     15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

12

> **. . . (2) The false representation of—**
>
> > **(A) the character, amount, or legal status of any debt; or…**
>
> **. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken**
>
> **. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

82. "When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril." *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012).

83. Convergent implied that it could obtain a copy of a judgment and mail it to Plaintiff when it knew it could not legally do so, in violation of 15 U.S.C. §§ 1692e(2)(a), 1692e(5), and 1692e(10).

84. Convergent misrepresented the legal status of an alleged debt, and threatened an action it did not intend to take and that legally could not be taken, in violation of 15 U.S.C. §§ 1692e(2)(a), 1692e(5), and 1692e(10) when it stated that upon written request, it would obtain a copy of a judgment and mail copy of same to Plaintiff, despite there being no such judgment in existence or legally possible.

85. 15 U.S.C. § 1692f of the FDCPA provides as follows:

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

86. Convergent used unfair means in an attempt to collect a debt, in violation of 15 U.S.C. §1692f, when it stated it would obtain a copy of a judgment and mail a copy of same to Plaintiff, despite there being no such judgment in existence or legally possible.

87.     Convergent referenced both verification and a potential for a judgment in its disclosure even where a judgment was not applicable or legally available, since the alleged debt was too old to sue upon.

88.     Convergent appears to have cut and pasted the language for the disclosure from the statutory text, but failed or refused to select the applicable dispute response available (*i.e.* verification vs. a copy of a judgment), in violation of the FDCPA. *See Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018) (…"debt collectors are required to tailor boilerplate language to avoid ambiguity.")

89.     Plaintiff was confused and worried as he did not know whether the debt was too old to sue upon, as stated in one part of the Letter, or not, since the Letter also references a judgment—which implies that the alleged debt can still be sued upon.

90.     An unsophisticated consumer would be confused and worried as he or she would not know whether the debt was too old to sue upon, as stated in one part of the Letter, or not, since the Letter also references a judgment—which implies that the alleged debt can still be sued upon.

91.     On or about February 13, 2020, Convergent mailed another collection letter to Plaintiff in connection with the collection of the alleged debt. ("Second Letter") (Exhibit B, Second Letter).

92.     As with the First Letter, the Second Letter states in part that "Because of the age of your debt, Cach, LLC cannot sue you for it".

93.     The Second Letter, as with the First Letter, confused Plaintiff as the First Letter indicated that Convergent could mail a copy of a judgment to him in order to

14

verify the alleged debt, though the Second Letter indicates that the debt is too old to sue on, and thus that no judgment can be obtained.

94.     A party may not merely parrot language of an order or a statute and comply with the FDCPA when such language is false. *See Boucher v. Fin. Sys. Of Green Bay, Inc.*, 880 F.3d 362, 370 (7th Cir. 2018) (analyzing the use of FDCPA safe harbor language drafted by the 7th Cir. when not applicable and finding a violation when the safe harbor language as applied was false).

95.     Violations of the FDCPA which would influence a consumer's decision to pay a debt in response to a dunning letter are material. *Boucher v. Fin. Sys. Of Green Bay, Inc.*, No. 17-2308, 2018 WL 443885, at *2 (7th Cir. Jan. 17, 2018) (citing *Muha v. Encore Receivable Mgmt., Inc.,* 558 F.3d 623, 628 (7th Cir. 2009)).

96.     Here, Convergent's statement that it could send a copy of a judgment to Plaintiff, when the debt was too old to sue upon, is material as it would confuse both Plaintiff and an unsophisticated consumer as it made Plaintiff believe (as it would make an unsophisticated consumer believe) that disputing the alleged debt may not matter, as a judgment could be obtained regardless of whether the alleged debt is too old to be sued upon.

97.     CACH bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Convergent and Resurgent. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016).

98.     Resurgent bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Convergent. *Id.*

15

99.     Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard.  *See*, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## CLASS ALLEGATIONS

100.    Plaintiff, Melvin Turcios, brings this action individually and as a class on behalf of the following class:

(1) all persons similarly situated in the State of Illinois (2) from whom Convergent attempted to collect on an alleged debt originated with Citibank but alleged to be owned by CACH (3) by mailing a form letter substantially similar to that mailed to Plaintiff attached within Exhibit A (4) which states:

> If you notify this office in writing at PO Box 9004, Renton, WA 98057 within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification . . . If you request this office in writing at in writing at PO Box 9004, Renton, WA 98057 within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(5) and which also states in part that: "Because of the age of your debt, Cach, LLC cannot sue you for it" (6) mailed during the period of time that begins one year prior to the filing of this Class Action Complaint and ends on the date of filing of the Class Action Complaint.

101.    The Letter within Exhibit A is a form letter.

102.    Convergent violated 15 U.S.C. §§ 1692e, 1692f, and 1692g of the FDCPA as the Letter i) misleadingly, falsely, deceptively and unfairly indicates that Plaintiff is required to dispute the debt and request the name and address of the original creditor by mailing a letter to a PO Box, and ii) misleadingly, falsely, deceptively and unfairly

communicates that Convergent could obtain and mail a copy of a judgment on the debt to Plaintiff while also stating that the debt is too old to sue upon, and thus that it cannot obtain a judgment as to the same.

103. As Exhibit A is a form letter, the Class likely consists of more than 40 persons each from whom Convergent attempted to collect a defaulted CACH debt.

104. Plaintiff Turcios's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of each Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

105. The prosecution of separate actions by individual members of each Class would create a risk inconsistent or varying adjudications with respect to individual members of the Class and would, as a practical matter, either be dispositive of the interests of other members of the Classes not party to the adjudication, or substantially impair or impede their ability to protect their interests.

106. Plaintiff Turcios will fairly and adequately protect and represent the interests of the Class. The factual and legal issues raised by this class action complaint will not require extended contact with the members of each Class, because Convergent's conduct was perpetrated on all members of the Class and will be established by common proof.

107. Moreover, Plaintiff Turcios has retained counsel that has been approved as class counsel in previous class actions brought under the FDCPA.

17

108.     CACH is liable for the violations committed by Resurgent and Convergent.

109.     Resurgent is liable for the violations committed by Convergent.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and the class and against Defendant Convergent as follows:

A.     Statutory damages pursuant to 15 U.S.C. § 1692k (a)(2);

B.     Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k (a)(3); and

C.     Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

By: s/*Mario Kris Kasalo*
One of Plaintiff's Attorneys

Mario Kris Kasalo
**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, IL 60602
Tel 312-726-6160
Fax 312-698-5054
mario.kasalo@kasalolaw.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: s/ *Mario Kris Kasalo*